## CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF SOUTH CAROLINA.

Justices of the Supreme Court during the Period comprised
in this Volume.

Hon. WILLIAM D. SIMPSON, Chief Justice.
Hon. HENRY McIVER, Associate Justice.
Hon. SAMUEL McGOWAN, "        "

## TINSLEY v. KIRBY.

1. A surety is a favorite of the law, and has a right to stand on the strict terms of his obligation.
2. *Quære:* Under the terms of a lawful constable's bond, requiring him well and truly to perform the duties of his office, would his sureties be liable for a penalty imposed upon him for collecting excessive fees?
3. Beyond the irregularities of the constable's bond here sued on—the requirements of law as to oaths, number of sureties, the clerk's approval and certificate, not being complied with—it was utterly void, as there is not and cannot be a regularly commissioned constable in this State, the legislature not having directed the manner by which they shall be chosen. *Const.*, Art. IV., § 21.
4. A surety is not estopped from denying his liability as such on a constable's bond, where the bond itself alleges that the constable had been appointed to office by a trial justice.
5. The rule that prohibits sureties from denying facts stated in obligations signed by them applies only to facts recited in obligations legal in themselves.

6. A surety on an official bond is certainly not estopped from denying his liability because that the bond recites an erroneous conclusion based upon a mistake of law.

7. That a voluntary"bond of a public officer is binding upon him and his sureties is a principle applicable only where the office was authorized by law, and no obstacle existed in the way of its being filled.

8. It does not apply to one as an officer *de facto*, if the office itself does not legally exist.

Before THOMSON, J., Spartanburg, October, 1879.

Action by T. A. Tinsley against Marcus Kirby and A. H. Kirby, commenced March 4, 1878. The opinion makes a full statement of the case.

Messrs. *Bobo & Carlisle*, for appellant, cited *Const.*, Art. IV. § 21; *Genl. Stat.* (1872) 205, §§ 1, 2, 3; *Brandt Sur.*, §§ 11, 12, 451; 22 *Ind.* 207; 4 *La. Ann.* 372; 60 *N. Y.* 421.

Mr. *J. S. R. Thomson*, contra.

The appellants are estopped from denying the recitals of the bond sued upon. *Brandt Sur.*, §§ 29–31, 444; *Big. Estop.* § 272; 17 *How.* 442; 2 *Pars. Cont.* 789; 7 *Rob. Prac.* 389. A common law or voluntary bond of a public officer is valid and binding upon said officer and his sureties. 1 *Bail.* 211; 2 *McC.* 107; 7 *Rich.* 232; 38 *N. J.* 324; 2 *Brock.* 96; *High Inj.*, § 961; *Brandt Sur.*, §§ 12, 13, 445; 10 *Wall.* 395; 1 *Chit. Cont.* 7. Under the terms of the bond in this case, both the defendants are responsible for the wrong-doing of M. Kirby. 8 *S. C.* 114; 1 *Hill*, 227; 15 *Stat.* 608, § 11.

March 18, 1882. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. This was an action on what purported to be the official bond of a constable as follows:

"Know all men by these presents, that we, Marcus Kirby and A. H. Kirby, are held and firmly bound unto the State of South Carolina in the penal sum of five hundred dollars, to the payment of which well and truly to be made we bind ourselves and each and every of us, our heirs, executors, and

administrators, firmly by these presents, sealed with our seals, and dated this 16th day of December, 1873. *Whereas,* the above bound Marcus Kirby has been appointed to the office of Constable by J. B. Tollison, Trial Justice, now the condition of the above obligation is such that if the above-bound Marcus Kirby shall well and truly perform the duties of the said office, as now or hereafter required by law, during the whole period he may continue in said office, then the above obligation to be void and of none effect, else to remain in full force and virtue."

(Signed       " M. KIRBY.      [L. S.]
              " A. H. KIRBY."    [L. S.]

This bond was filed in the office of the clerk of the county, on December 16, 1873. Attached to it was a paper addressed to the clerk as follows : " Capt. F. M. Trimmier : I hereby appoint Marcus Kirby my constable by his compliance with the law. Dec. 15, 1873. (Signed) J. B. Tollison, Trial Justice." At the time the bond was filed Marcus Kirby took and subscribed the constitutional oath, Section 30, Article II., and entered upon the duties of the office.

While acting as constable under this appointment, he was employed in that capacity by Trial Justice B. H. Steadman, in a case before him against one T. A. Tinsley, for assault and battery. Tinsley was convicted and fined five dollars and costs. Marcus rendered his bill of costs, which were taxed, and Steadman gave him *a special appointment in writing* to collect the money, fine and costs, which he did. Tinsley sued Marcus for extortion and oppression in office for charging and collecting improper fees. In that case it appeared that he had taxed and collected $10.96 in excess of his lawful fees, and Tinsley had a judgment for ten times the amount under the act upon the subject, which judgment was affirmed by this court. 8 *S. C.* 114.

The execution against Marcus was returned *nulla bona,* and now the plaintiff Tinsley sues the surety *A. H. Kirby* on the bond for the amount recovered against Marcus. The presiding judge charged the jury that the bond sued on was suffi-

cient to sustain an action against Marcus for misconduct in office, and also against A. H. Kirby as surety; that Marcus having assumed to act, was a constable *de facto*, and responsible for acts done in that character, and A. H. Kirby as surety was liable for the amount of the recovery against Marcus for official misconduct. The jury found for the plaintiff $273.09, the amount of the recovery against Marcus and the costs therein. A. H. Kirby appeals to this court and asks that the judgment be reversed on the ground of error in the charge of the judge.

The recovery against Marcus Kirby was not on the bond, but under the statute which declares that "if a constable shall charge any other fees or for any other service than herein allowed, such constable shall be liable to forfeit to the party injured ten times the amount of excess of fees so improperly charged, *to be recovered by suit* in the Court of Common Pleas." *Gen. Stat.* 208. The execution on the judgment recovered being returned *nulla bona* the plaintiff now sues the surety, A. H. Kirby, on the bond to make him liable for the penalty recovered against Marcus, upon the ground that such illegal charging on the part of Marcus was *a breach of his official bond*, and the penalty imposed by law *on him* must be the measure of damages *against the surety*.

A rule never to be lost sight of in determining the liability of a surety is that he is a favorite of the law, and has the right to stand on the strict terms of his obligation, when such terms are ascertained. This is a rule universally recognized by the court, and is applicable to every variety of circumstances.

If this bond were free from objection as to its validity, there would be at least a question whether the surety should be made liable upon it for *penalties* imposed upon his principal for malfeasance in office. The words of the bond are, "That if the above-bound Marcus Kirby shall well and truly perform the duties of said office as now or hereafter required by law, during the whole period he may continue in said office, that the above obligation to be void and of none effect; *else to remain in full force and virtue*." To remain in full force and virtue for what purpose? Might not the answer be to pay all

damages that may result from the failure of the principal " well and truly to perform," but not *the penalties* which may be imposed on him for a *quasi-criminal* violation of his duty?

Does not this consideration touch at least the quantum of damages? Before the act of 1846 (11. *Stat.* 358) the sureties of a sheriff were held not to be liable for the penalties imposed by acts of the legislature for not returning execution and not paying over money within ten days after demand. *Treasurers* v. *Hilliard,* 8 *Rich.* 412. In that case Judge O'Neall pertinently says: " The undertaking of the securities is, that the sheriff shall discharge the duties of his office; his failure to pay over money collected by him or to return the execution in his office according to law are violations of his duty, and consequently breaches of the covenant contained in the condition of the official bond; and the securities became thereby liable to respond in damages to the parties interested. But penalties imposed on the sheriff for a violation of his duties are not damages sustained by the parties affected by his default. They are punishments inflicted by the law on the sheriff himself for a *quasi*-criminal neglect of duty. If the penalties were in the nature of liquidated damages, it is possible the sureties might be liable, but there is nothing in the acts which authorizes us so to regard them."

But it is unnecessary to make any ruling on this point. There can be no doubt that as a statutory obligation this bond was utterly void. It was not executed as the law directs, the requisite oaths were not taken, and the required number of sureties were not given. The clerk did not approve the bond in writing or issue a certificate of appointment.

But beyond all these irregularities, it is a remarkable fact that there is not and cannot be a *regularly commissioned constable in the state.* What the office was intended to be, its duties and fees, are laid down in detail; but the law fails to afford the means by which the office can be obtained. " Constables shall be chosen in each county by the qualified voters thereof in such manner as the general assembly shall direct, for the term of two years." *Const.,* Art. IV., § 21. The legislature has not directed the manner in which a constable may be cho-

sen by the qualified electors, and the result is, that there can be no regular constable in the state. There is an authority for making a temporary special appointment in the proviso of the second section of the constables act, which declares, "nor shall any person not so qualified exercise the powers of constable. *Provided*, that nothing herein contained shall prevent a presiding judge or a trial justice from appointing a constable to act by virtue of such appointment, *only on a particular occasion to be specified in writing*." As was said in the case of the *State, Ex Rel. McCall*, v. *Cohen*, 13 *S. C.* 201: "The court is bound to take judicial cognizance of the fact that there is no such office in the state as a regular constable, inasmuch as the constitution provides that such officer shall be chosen in each county by the qualified voters thereof in such manner as the general assembly shall direct, and the statute-book fails to show that any such direction has ever been given."

It is said, however, that the bond recites that Marcus Kirby was constable, and the parties who signed the bond are estopped from denying it. We suppose where recitals are referred to, all the recitals must be taken into consideration. While this bond does recite that Marcus Kirby had been appointed to the office of constable, it also recites that the appointment was made "by J. B. Tollison, Trial Justice," which was impossible and illegal, making the alleged appointment simply a nullity. The general rule is that sureties are estopped to deny the facts recited in the obligations signed by them, and this whether the recitals are true or false; having once solemnly alleged the existence of the facts, they cannot afterwards be heard to deny them. But as we understand it, this rule applies *to facts* in connection with bonds possible and legal in themselves. If such bond could not be legal, we cannot see how a false assertion could dispense with the law and make it valid. A surety is not in all cases estopped to deny the facts recited in the obligation signed by him. Thus, a court had appointed a guardian for a minor, and while such appointment was unrevoked, appointed another, who gave bond with a surety, *reciting that he had been appointed guardian*. In a suit on this bond against the surety, it was held that the appointment of the last

guardian *was absolutely void*, and that the surety might show the fact. *Thomas* v. *Burrus*, 23 *Miss.* 550. The court said: " It is certainly true that where a party makes a distinct and clear recital of any fact in a deed or other valid obligation he will be estopped from denying the truth of such recital. But this doctrine presupposes a valid legal obligation, and we do not know any authority, and reason is certainly against the proposition, that the party is estopped by any recital contained in an instrument from showing that the instrument is absolutely null and void."

Again, a defendant was taken under a bail writ, and the sheriff by mistake took a bond for the prison bounds, which *recited the defendant's imprisonment to have been under a ca. sa.* Held, the bond was void, and that the surety was not estopped to show that there was no ca. sa. *Miller* v. *Bagwell*, 3 *McC.* 429. The ground of the decision is stated as follows : " It is a general rule of law, and a correct one too, that a man cannot aver against his own deed ; but that is where he has alleged some particular fact within his own knowledge, and which forms a part of the consideration for his undertaking, and that is the whole extent to which the cases relied on go. But the principle cannot be extended to an allegation coming from the other party, and which can be necessarily known only to him, although contained in the recital of a deed made by the defendant. The person supposed to be estopped is the very person imposed on."

The case before us is even stronger than that; for here, probably, both the clerk who furnished the bond and the parties who signed it were mistaken upon *a question of law*. No falsehood in fact was recited, but an erroneous conclusion of law that J. B. Tollison could appoint Marcus Kirby a regular constable.

But it is urged that at common law a voluntary bond of a public officer is valid and binding upon him and his sureties. It is true that a bond, whether required or not, is good at common law, if entered into voluntarily, for a valid consideration, and if it is not repugnant to the letter and policy of the law ; and the surety on such bond is bound thereby. This

is upon the just principle, that parties shall not be allowed to take advantage of their own wrong, and, after enjoying the benefits which the bond secured, then deny their liability. But in all the cases in which the principle has been applied, the office, the performance of whose duties was secured by the bond, *was authorized by law, and no obstacle existed in the way of its being filled.*

We have been referred to no case in which the surety was held liable on a bond, purporting to be official, where there could be no such office as that claimed. In reference to the office of constable, the statute declares : "Nor shall any person not so qualified (by election, etc.) exercise the powers of constable." This is a positive prohibition, which could not be set aside by the agreement of the parties to disregard it. The alleged appointment of Trial Justice Tollison was against both the letter and policy of the law: "Thus a statute provided that express companies should not do business in the state, without recording, in every county in which they did business, a statement showing the stockholders' names, residences, etc. An express company, without complying with the law, appointed an agent, *who gave bond for the faithful performance of his duties.* The agent collected money for packages sent, and failed to pay it over, and it was held that the surety was not bound. The bonds being given for the performance of an illegal act, viz., sending packages by express, was void." *Brandt on Suretyship,* § 11 ; *Daniels* v. *Barney,* 22 *Ind.* 217.

In the case of *Cross* v. *Gabeau and Hunt,* 1 *Bail.* 211, there was a legally appointed collector of fines in the regiment, the difficulty being that no bond was required by law.

In the case of *Stevens* ads. *Treasurer,* 2 *McC.* 107, the legal office of sheriff existed, and the only difficulty was in respect to irregularities in the execution of the bond required by statute. And so in reference to the *State* v. *Toomer,* 7 *Rich.* 232, Mr. Laurens had been elected to the office of master in equity. And so in all the other cases cited.

It is true that under some circumstances the sureties of an officer *de facto* will be held liable just as if he were an officer *de jure.* But the surety will not be held liable in such case,

unless the office in reference to which the transaction takes place actually exists. A party who volunteers to perform the duties of an office which does not exist, and which, in the manner assumed, is in fact prohibited by law, can not, in any just sense of the term, be called an officer *de facto*, but a mere usurper. "A state treasurer was re-elected, and accepted a new commission and took a new oath, and continued to discharge the duties of the office, but failed to file a new bond within the time prescribed by law, which failure by law worked a forfeiture of the office. Held, that this was not a holding over of the old term; but the treasurer was an officer *de facto*, holding as of a new term; and that sureties on a new bond, afterwards filed by the treasurer, which recited his election as treasurer, were estopped to deny that he was holding as of the new term *de jure*. *The court said it would have been otherwise if he had been a mere usurper, and not an officer de facto.*" —*Brandt Sur.*, § 445.

The judgment of this court is that the judgment of the Circuit Court be reversed.*

4. Long silence and acquiescence, induced by ignorance of the law in regard to the right of homestead, do not operate as an estoppel upon creditors.

---

* Except where otherwise stated, the opinion and judgment of the court are unanimous.